

✓Ellis (A)

FEB - 4 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983

Action Number 1:11cv139
(To be supplied by the Clerk, U.S. District Court)

Please fill out this complaint form completely. The court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed. Please print/write legibly or type.

I. PARTIES

A. Plaintiff:

1. a. Ophelia De'Lonta (name)   b. 1014174 (inmate number)

   c. Buckingham Corr. Ctr. (address)

   P.O. Box 430, Dillwyn, Va. 23936

Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release. If plaintiff fails to keep the Clerk informed of such changes, this action may be dismissed.

B. Defendant(s):

Plaintiff is advised that only persons acting under color of state law are proper defendants under section 1983. The Commonwealth of Virginia is immune under the Eleventh Amendment. Private parties such as attorneys and other inmates may not be sued under section 1983. In addition, liability under section 1983 requires personal action by the defendant that caused you harm. Normally, the Director of the Department of Corrections, wardens and sheriffs are not liable under section 1983 just because they supervise persons who may have violated your rights. These persons are liable only if they were personally involved in the alleged deprivation. In addition, prisons, jails, and departments within an institution are not persons under section 1983.



1. a. <u>See Attachment</u>          b. _____
      (name)                            (title/job description)

   c. _____
      (address)

   _____

2. a. _____     b. _____
      (name)                            (title/job description)

   c. _____
      (address)

   _____

3. a. _____     b. _____
      (name)                            (title/job description)

   c. _____
      (address)

   _____

If there are additional defendants, please list them on a separate sheet of paper. Provide all identifying information for each defendant named.

Plaintiff MUST provide an address for defendant(s) in order for the court to serve the complaint. If the plaintiff does not provide an address for a defendant, that person may be dismissed as a party to this action.

In addition, plaintiff MUST provide a copy of the completed complaint and any attachments for EACH defendant named.

II. PREVIOUS LAWSUITS

A. Have you ever begun other lawsuits in any state or federal court relating to your imprisonment? Yes [X] No [ ]

B. If your answer to A is YES: You must describe any lawsuit, whether currently pending or closed, in the space below. [If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.]

1. Parties to previous lawsuit:

   Plaintiff(s) __Ophelia De'Lonta__

   Defendant(s) __Ronald Angelone, et al (1999)__
   __Gene Johnson, et al (2005) & 2010__

2. Court [if federal court, name the district; if state court, name the county]:
   __Eastern District__

3. Date lawsuit filed: __1999 & 2005 & 2010 respectfully__

4. Docket number: __1999 - (unk) - cite: 330 F.3d 630__
   __2005 - Action No. 1:07cv245; 2010 - Action No. 1:09cv1167__

5. Name of Judge to whom case was assigned: __1:10cv838 (TSE) JFA)__

   __1999 case was assigned to Judge Turk --2005 case assigned to__
   __Judge Buchanan - 2010 1:09cv1167 assigned to Judge Ellis__

6. Disposition [Was case dismissed? Appealed? Is it still pending? What relief was granted, if any?]:

   __all cases reached settlement, 1:10cv838(TSE) JFA) was dismissed.__
   __1:09cv1167 is still pending__

## III. GRIEVANCE PROCEDURE

A. At what institution did the events concerning your current complaint take place?

   __Buckingham Corr. Ctr., Powhatan__

B. Does the institution listed in A have a grievance procedure? Yes [X] No [ ]

C. If your answer to B is YES:

   1. Did you file a grievance based on this complaint? Yes [X] No [ ]

   2. If so, where and when: __Buckingham Corr. Ctr.__

   3. What was the result? __expired filing period, and repetitive__

   4. Did you appeal? Yes [X] No [ ]

5. Result of appeal: ___upheld___

___see exhibit D - D1___

D. If there was no prison grievance procedure in the institution, did you complain to the prison authorities? Yes [ ] No [ ]

If your answer is YES: What steps did you take?

E. If you answer is NO, explain why you did not submit your complaint to the prison authorities.

IV. STATEMENT OF CLAIM:

[State here as briefly as possible the facts of your case. Describe how each defedant is involved and how you were harmed by their actions. Also include the names of any other persons involved, dates and places of events. You may cite constitutional amendments you allege were violated, but do not give any legal arguments or cite any cases or statutes. If you intend to allege several related claims, number and set forth each claim in a separate paragraph. (Attach additional sheets if necessary.)]

___See Attachment___

## V. RELIEF

I understand that in a section 1983 action, the Court cannot change my sentence, release me from custody or restore good time. I understand I should file a petition for a writ of habeas corpus if I desire this type of relief. _____ OD _OD_ [please initial]

The plaintiff wants the Court to: [check the remedies you seek]

_____ award money damages in the amount of $_____ See Attachment _____

_____ grant injunctive relief by _____

_____ Other _____

## VI. PLACES OF INCARCERATION

Please list the institutions at which you were incarcerated during the last six months. If you were transferred during this period, list the date(s) of transfer. Provide an address for each institution.

_____ Buckingham Corr. Ctr. _____

_____

_____

_____

## VII. CONSENT

CONSENT TO TRIAL BY A MAGISTRATE JUDGE: The parties are advised of their right, pursuant to 28 U.S.C. § 636(c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit.

Do you consent to proceed before a U.S. Magistrate Judge: Yes [x] No [ ]. You may consent at any time; however, an early consent is encouraged.

## VIII. SIGNATURE

If there is more than one plaintiff, each plaintiff must sign for himself of herself.

Signed this 19th day of January ~~December~~, 2011.

Plaintiff _Ophelia DeCosta_

# IN FORMA PAUPERIS AFFIDAVIT

I hereby apply for leave to proceed with this complaint without prepayment of fees or costs or giving security therefore. In support of my application, I state under oath that the following facts are true:

1. I am the plaintiff in this complaint, and I believe that I am entitled to redress.

2. I am unable to prepay the costs of said action or give security therefore, because: __N/A__ _____

3. I have no assets or funds which could be used to prepay the loan or costs except: __N/A__ _____

(Write "none" above if you have nothing; otherwise, list your assets)

_____
Signature of Plaintiff

"I declare under penalty of perjury that the foregoing is true and correct."

Executed on this 19th day of ~~December~~ January, 2010.

*Ophelia Dntntq* (signature)
~~Signature of Plaintiff~~

IT IS NO LONGER NECESSARY TO HAVE YOUR PETITION NOTARIZED.

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ _____ on account too his credit at the penal institution where he is confined. I further certify that the petitioner, likewise has the following sureties to his credit according to the records of said penal institution.

_____
_____
_____

_____
Authorized Officer of Penal
Institution

```
                         IN THE
              UNITED STATES DISTRICT COURT
                       FOR THE
              EASTERN DISTRICT OF VIRGINIA
                   Alexandria Division
```

OPHELIA AZRIEL DE'LONTA,         )
                                  )
                Plaintiff,        )
                                  )
v.                                )
                                  )   Civil Action No. 1:11cv139 TSE/TCB
GENE JOHNSON, Director,           )
Virginia Department of            )
Corrections, et al.,              )
                                  )
                Defendants.       )


## NATURE OF THIS ACTION

1. This is a civil rights action under U.S.C. § 1983 arising out of the deliberately indifferent denial of adequate medical treatment, alleging cruel and unusual punishment and denial of due process, in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States.

2. Plaintiff Ophelia Azriel De'lonta ("De'lonta") is in the custody of the Virginia Department of Corrections ("VADOC") under the control of defendant Gene Johnson ("Johnson").

3. De'lonta has been diagnosed with Gender Identity Disorder ("GID"), a condition which in her case has created a serious need for medical treatment.

## PARTIES

4. At all times relevant hereto, plaintiff Ophelia Azriel De'lonta has been a prisoner in the custody of the Virginia Department of Corrections.

5. Defendant Gene Johnson was, at all times relevant hereto, Director of the Virginia Department of Corrections.

6. Defendant Fred Schilling was, at all times relevant hereto, the Director of Health Services for VADOC and final policy maker.

7. Defendant Meredith R. Carey was, at all times relevant hereto, the Chief Psychiatrist for VADOC, primary caregiver for De'lonta, and final policy maker.

8. Defendant Gary L. Bass was, at all times relevant hereto, the Chief of Operations for VADOC and final policy maker.

9. Defendant W.P. Rogers was, at all times relevant hereto, Assistant Deputy Director of Operations for VADOC and final policy maker.

10. Defendant Gerald K. Washington was, at all times relevant hereto, Regional Director Central Regional Office for VADOC and final policy maker.

11. Defendant Eddie Pearson was, at all times relevant hereto, the Warden of Powhatan Correctional Center of VADOC and is a final policy maker.

12. Defendant Anthony Scott was, at all times relevant hereto, Chief of Security of Powhatan Correctional Center and a final policy maker.

13. Defendant Robin L. Hulbert, PhD, was, at all times relevant hereto, the Mental Health Director for VADOC and final policy maker.

14. Defendant Larry Edmonds was, at all times relevant hereto, the warden of Buckingham Correctional Center of VADOC and is a final policy maker.

15. Defendant C. Davis was, at all times relevant hereto, Major Chief of Security of Buckingham Correctional Center. Major Davis was also a member of De'lonta's treatment team, of VADOC and is a final policy maker.

16. Defendant Lisa Lang was, at all times relevant hereto, a staff psychologist and a member of De'lonta's treatment team as De'lonta's primary therapist.

17. Defendant Toney was, at all times relevant hereto, a counselor at Buckingham Correctional Center and a member of De'lonta's treatment team.

18. All defendants herein are sued in their individual and official capacities.

## JURISDICTION AND VENUE

19. This court has jurisdiction over the claims presented herein pursuant to 43 U.S.C. §§ 1331(a) and 1343.

20. This court has supplemental jurisdiction over De'lonta's state law tort claims pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

21. Plaintiff Ophelia Azriel De'lonta is a pre-operative transsexual female, who is serving a 73 year sentence with the possibility of parole for bank robbery.

22. De'lonta is also suffering from a severe form of a rare, medically recognized major illness known as Gender Identity Disorder ("GID").

23. De'lonta has believed that she is actually a female who has been cruelly trapped in a male's body ever since she was a little girl.

24. This belief has caused De'lonta to suffer constant mental anguish and, at times, abuse.

25. While incarcerated, it has also caused De'lonta, on several occasions, to attempt to castrate herself.

26. De'lonta has received hormone therapy for GID. De'lonta's treatment also consists of regular psychological counseling.

27. The hormone treatment has resulted in various physical changes to De'lonta's body, including enlargement of breasts, decreased body hair and change of voice intonation.

28. As a result of a civil action, 330 F.3d 630 (1999), and according to the settlement thereof, the VADOC has provided, and continue to provide, limited treatment. That lawsuit culminated in a settlement agreement which put Director Gene Johnson "on notice that De'lonta has a serious medical need which is currently not being properly treated." Therefore he has a responsibility to respond reasonably to it.

29. De'lonta has a serious medical need based on her diagnosis of GID. GID is defined as a major mental illness by the Diagnostic and Statistical Manual, Fourth Edition Text Revision ("DSM-IV-TR"). A transsexual, as the Supreme Court has described it, suffers from: "[a] rare psychiatric disorder in which a person feels persistently uncomfortable about her or his anatomical sex, and who typically seeks medical treatment, including hormone therapy and surgery, to bring about a permanent sex change."

30. De'lonta has had GID since her earliest memories. Substantial long-term history supports De'lonta's diagnosis with VADOC.

31. The agents and employees of VADOC, including defendants herein and medical professionals under contract to the VADOC, have acknowledged her diagnosis. Nonetheless, defendants have persistently denied De'lonta treatment.

32. De'lonta persistently feels like a woman trapped in a man's body. The failure to provide medical treatment to her will lead to serious bodily harm, untreated mental illness, depression, self-mutilation, and suicide.

33. The appropriate, generally accepted treatment for De'lonta includes treatment pursuant to "Standards of Care" published by the Harry Benjamin International Gender Dysphoria Association, Inc. The Standards of Care establish a "triadic treatment sequence" for treatment. This triadic treatment sequence is comprised of: (1) hormone therapy; (2) a real-life experience of living as a member of the opposite sex; and, (3) sex reassignment surgery.

34. The Standards of Care state that cross-sex hormones are "often medically necessary" for "properly selected adults with gender identity disorders." "They improve the quality of life and limit the psychiatric comorbidity, which often accompanies lack of treatment." The administration of hormones to a transsexual typically diminishes co-existing serious psychological problems such as depression and suicidality. As the Standards of Care explain: "Hormone therapy can provide significant comfort to gender patients who do not wish to cross live or undergo surgery, or who are unable to do so. In some patients, hormone therapy alone may provide sufficient symptomatic relief to abviate the need for cross living or surgery."

35. Pursuant to the Standards of Care, after at least one year of a real-life experience, including hormones, sex reassignment surgery is medically indicated in some individuals. The Standards of Care state that: "Sex reassignment is effective and medically indicated in severer GID in persons diagnosed with transsexualism or profound GID. Sex reassignment surgery, along with hormone therapy and real-life experience, is a treatment that has proven to be effective. Such a therapeutic regimen, when prescribed or recommended by qualified practitioners, is medically indicated and medically necessary. Sex reassignment is not "experimental", "investigational", "elective", "cosmetic", or optional in any meaningful sense. It constitutes very effective and appropriate treatment for transsexualism or profound GID.

36. Mental health services are provided by VADOC as well under contract with Dr. Codispoti, Gender Identity Specialist.

37. Nearly six years after the settlement in the Western District Court, the VADOC has been giving De'lonta limited treatment for GID. During the course of treatment, medical and mental health staff informed De'lonta if she stopped self-injury she would receive surgery. De'lonta began treatment with hormones during the winter of 2004, commencing the one year "real-life test" required by the Standards of Care. She has been dressing and living as a woman to the full extent permitted by VADOC. She has developed breasts as a result of hormone treatment.

38. Under Standards of Care, De'lonta should have been evaluated for sex reassignment surgery after a one year real-life test. At the conclusion of one year on hormones, nothing occurred. De'lonta's mental health professional, Chief Psychiatrist Meredith R. Cary, and also Mental Health Director Dr. Robin L. Hulbert, were unwilling to give any information regarding her treatment plan, despite De'lonta's persistent requests. (See Exhibit A )

39. Despite repeated requests from De'lonta and intervention by her counsel, De'lonta has not received an evaluation concerning readiness for sex reassignment surgery.

40. The defendants, by failing to provide adequate medical treatment for De'lonta, have disregarded her serious medical need and placed her at a substantial risk of serious medical harm. De'lonta has been diagnosed by physicians retained by the VADOC as having a serious medical need. She has been denied adequate medical care - the very care recommended by the VADOC retained experts - for her serious medical need.

41. The defendants, who are officials responsible for making the relevant decisions regarding D'lonta's care, are aware, based

on information they have received from recommendations of experts, that a serious risk of harm exists, and the defendants have drawn the inference that such a risk exists. Nonetheless, the defendants have behaved wantonly by failing to provide adequate medical care. (See Exhibits B ).

42. The defendants are acting in bad faith and do not perceive any genuine conflict between providing adequate medical treatment and "security" concerns.

43. The defendants' treatment decisions regarding De'lonta were not based on her unique circumstances or an individualized medical evaluation of De'lonta, but rather were based on a choice made for political rather than medical reasons. The defendants' reasons for denying medical treatment are not rooted in legitimate penological concerns.

44. The defendants have knowingly and unreasonably disregarded an intolerable risk of harm to De'lonta and will continue to do so unless injunctive relief is entered. (See Exhibits B, C, A). De'lonta has written each defendant personally, expressing her fear of self-castration and noting that she will remain at serious risk of harm if treatment is not forthcoming.

COUNT I

DENIAL OF ADEQUATE MEDICAL TREATMENT WITH DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED IN VIOLATION OF THE EIGHTH AMENDMENT.

45. The plaintiff repeats and realleges the allegations of Paragraphs 1 through 43 as if fully set forth herein.

46. De'lonta has a serious medical need for full treatment in accordance with the discretion of her treating physician and medical personnel, including the recommendations of consulting physicians in the treatment of GID.

47. De'lonta's serious medical need has not been treated and she has been denied full treatment, including sex reassiginment surgery.

48. Defendants have been deliberately indifferent to De'lonta's serious medical needs and have denied her treatment for reasons that are unrelated to her medical needs or to legitimate security concerns. Defendants know that medical experts consider De'lonta to be at risk for serious medical harm and have knowingly disregarded that risk.

49. Defendants' denial of medically necessary care for De'lonta constitutes deliberate indifference to her serious medical needs and cruel and unusual punishment, in violation of De'lonta's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.

50. De'lonta faces a substantial and imminent risk of serious medical harm.

## COUNT II
DENIAL OF DUE PROCESS AND DELIBERATE INDIFFERENCE TO DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT.

51. The plaintiff repeats and realleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

52. De'lonta's complaints are brought pursuant to the Fourteenth Amendment, to deny access to any such service to any individual, or to differentiate adversely in relation to any individual, on a prohibited ground of discrimination.

53. There is no dispute that discrimination on the basis of transsexualism constitutes sex discrimination as well as discrimination on the basis of a disability.

54. VADOC policy requiring that anatomically male prisoners be held in male institutions clearly has an adverse, differential effect on pre-operative male to female transsexual inmates. Non-transsexual inmates are placed in prisons in accordance with both their anatomical sex and their gender. Transsexual inmates, however, are placed in accordance with their anatomical sex, but not their gender.

55. VADOC's justification for its refusal to allow pre-operative transsexuals to be placed in institutions in accordance with their target gender is highly impressionistic. The VADOC contention that pre-operative male to female transsexuals cannot be placed in female prisons because of the reaction of female inmates is extremely troubling, as it gives legitimacy to the prejudicial attitudes of others, which attitudes are based upon fear and misinformation.

56. Insofar as the risk that would be posed to female inmates if they were required to share facilities with a pre-operative male to female transsexual is concerned, non-consensual sexual activities occur now in both male and female institutions.

57. Transsexuals in transition who are living as members of the desired sex should be considered to be members of that sex

for the purposes of human rights protected by the Equal Protection Clause of the Fourteenth Amendment. Pre-operative male to female transsexuals should be treated as women and housed accordingly.

58. VADOC has, and continues its practice of discriminating attitudes of female inmates to preclude the placement of pre-operative male to female transsexuals in female prisons, is one which accords with a line of human rights jurisprudence concerning customer preference as a defense to an allegation of discrimination.

59. It is, however, indeed no defense to a complaint of discrimination that an employer or service provider acted in a discriminatory fashion because of the demands of his or her customers.

60. Accordingly, VADOC does not provide transsexual inmates the level of health care provided to other inmates.

61. VADOC has failed to recogtnize the special vulnerability of the pre-operative transexual inmate population within the various types of facilities available in the male prison system.

62. As the Director and final policy maker, defendants Johnson, Mental Health Services Robin Hulbert, and Chief Psychiatrist Cary have known, and continue to know yet disregard an excessive risk to De'lonta's health and safety by intentionally providing an easier or cheaper, but much less effective, course of treatment.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff requests that this court:

1) Enter injunctive relief against the defendants enjoining them from interfering with the discretion of the mental health and other medical professionals involved in her care.

2) Enter injunctive relief against defendants enjoining them to provide adequate medical care to De'lonta, following the Benjamin Standard of Care, guided by a gender certified specialist, experienced in treating gender identity disorder, including sex reassignment surgery.

3) Award monetary damages against all defendants herein for compensatory and punitive purposes in the amount of One Hundred Thousand Dollars each.

4) Award such other relief as shall be requested in the interests of justice.

## DECLARATION

Plaintiff hereby declares under penalty of perjury that the statements of the foregoing action are true and correct to the best of plaintiff's knowledge and belief.

Executed on: January 19th 2011

_Ophelia Azriel De'lonta_
Ophelia Azriel De'lonta